UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**

**VERSUS**

**MILTON HENRY,**
**a/k/a AUSA: Michael J. Jefferson**
**Milton James Henry and Milton J. Henry**

**CRIMINAL**

**NO. 15-26-JWD-SCR**

### ORDER ON DEFENDANT'S MOTION TO SUPPRESS

## I.      INTRODUCTION

Before the Court is the Motion to Suppress ("Motion to Suppress"), (Doc. 14), filed by Mr. Milton Henry ("Milton" or "Defendant"), and further supported by his Post-Hearing Memorandum in Support ("Defendant's Memorandum"), (Doc. 29). It is opposed by the United States of America ("United States" or "Government"), which has submitted the Opposition to Motion to Suppress ("Government's Opposition"), (Doc. 17), and the Memorandum in Opposition ("Government's Memorandum"), (Doc. 30). The Parties have not only extensively briefed this issue but also argued their positions at two hearings, the first held on June 16, 2015 ("First Hearing"), (Doc. 27), and continued on July 31, 2015 ("Second Hearing"), (Doc. 28). Having carefully considered the Parties' arguments to date, for the reasons set forth more fully set forth below, the Court **DENIES** the **Motion to Suppress**.

## II.      FACTUAL BACKGROUND

On February 13, 2014, at approximately 8:00 p.m., Defendant was driving a 1998 Pontiac[1] on Central Woods Avenue in Baton Rouge, Louisiana. (Doc. 14 at 1; Doc. 17-1 at 1.) Simultaneously, East Baton Rouge Sheriff's Office Corporal Carl Trosclair ("Corporal Trosclair") and West Feliciana Sheriff's Office Deputy Marty Freeman ("Deputy Freeman") (collectively, "Officers") were patrolling the area, having been assigned to the Delta Narcotics Task Force. (Doc. 14 at 1; Doc. 17-1 at 1.) Upon seeing Defendant's vehicle, the officers noticed that the license plate frame was obstructing the view of the license plate's expiration date. Believing that a license plate so obscured violated Louisiana law, characterized as "a minor violation of a traffic ordinance involving the visually impaired portion of [D]efendant's license plate" by the Government, (Doc. 30 at 2), and as "a suspected violation of the Louisiana laws and regulations regarding proper display of a license plate" by Defendant," (Doc. 14 at 1), the Officers initiated a traffic stop. (Doc. 14 at 1; Doc. 17-1 at 1; Doc. 29 at 1; Doc. 30 at 2.)

After pulling the vehicle over, Corporal Trosclair first made contact with Defendant. (Doc. 17-1 at 2; *see also* Doc. 29 at 1.) He requested Defendant's driver's license and other vehicle information. (Doc. 17-1 at 2.) While doing so, Corporal Trosclair detected the strong odor of marijuana. (Doc. 29 at 1; Doc. 30 at 2.) Accordingly, he ordered Defendant and the passenger to step out of the vehicle. (Doc. 29 at 1; Doc. 30 at 2.) Both Defendant and a passenger complied. (Doc. 29 at 1; Doc. 30 at 2.)

Corporal Trosclair then advised Defendant of the reason for the stop and of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) ("*Miranda*"). (Doc. 17-1 at 2; Doc. 29 at 1.) Defendant confirmed he understood his rights.

---

[1] Defendant's motion avers that he was driving a Pontiac Firebird, while the Government states that Defendant was driving a Pontiac Thunderbird. (*Compare* Doc. 14 at ¶ 3, *with* Doc. 17-1 at 1.) However, this inconsistency has no bearing on the instant dispute.

(Doc. 30 at 2.) Corporal Trosclair then asked Defendant if he had any marijuana in the vehicle; Defendant acknowledged that he had a small marijuana "blunt" in the ash tray. (Doc. 17-1 at 2; Doc. 29 at 1; *see also* Hr'g Tr. 10:8–17, 38:8–18, June 16, 2015.) Defendant further stated that his wife's gun was in the center console of the vehicle. (Doc. 17-1 at 2; Doc. 29 at 1.) Based on these several (and uncontested) facts—the smell of marijuana emanating from the vehicle and Defendant's representations regarding this bud and his wife's firearm—Corporal Trosclair sought and obtained consent to search the vehicle. (Doc. 30 at 3; *see also* Hr'g Tr. 11:8–12, June 16, 2015.) In a black pouch on the rear passenger side floor, officers found two clear plastic bags of marijuana, a digital scale, and twenty-five dollars in United States currency. (*See, e.g.*, Doc. 17-1 at 2; Doc. 29 at 1.) The search also yielded a black Beretta, .32 caliber, semi-automatic pistol, model 3032 Tomcat, bearing serial number DAA184596, with three rounds in the magazine and one in the chamber, and an additional forty dollars in the driver's side visor. (Doc. 17-1 at 2–3; *see also* Doc. 14 at 1.) Defendant acknowledged that the marijuana, scale and gun belonged to him. (Doc. 17-1 at 2; *see also* Hr'g Tr. 11:13–22, 13:6–7, June 16, 2015.) No contraband was found on Defendant's person or his passenger. (*See* Doc. 17-1 at 2.)

Defendant was then placed in the rear of a marked City of Baker Police car without being handcuffed.[2] (Doc. 30 at 3; *see also* Doc. 29 at 1; Hr'g Tr. 12:4–9, June 16, 2015.) Corporal Trosclair then asked Defendant if he had any additional marijuana at his residence, to which Defendant responded affirmatively. At that point, Ramona Henry ("Ms. Henry"), Defendant's wife, arrived on scene. (Doc. 30 at 3.) Corporal Trosclair advised Ms. Henry of what had occurred and sought consent to search her residence. Doc. 29 at 1; Doc. 30 at 4.) Ms. Henry executed a search waiver form and permitted officers to search the residence. (Doc. 29 at 1; Doc. 30 at 4.)

---

[2] The Government states that Defendant was not handcuffed because of a physical handicap to his left arm. (Doc. 17-1 at 2.)

Ms. Henry also advised officers that she did not own any firearms or use the vehicle that Defendant had been driving. (Hr'g Tr. 37:11–13, June 16, 2015.)

A City of Baker police officer remained with Defendant while other officers followed Ms. Henry to her residence, located at 14924 Central Woods Avenue. (Doc. 30 at 4; Hr'g Tr. 14:24–15:11, June 16, 2015.) During this search of Defendant's residence, officers located two small bags of marijuana in a cookie container and a digital scale, both on the kitchen table. (Doc. 30 at 4; Doc. 17-1 at 3; Hr'g Tr. 15:12–16, June 16, 2015.) A search of a gold jewelry box on the kitchen table revealed a small clear plastic bag of suspected cocaine. A marijuana grinder was also located on a china cabinet. (Doc. 17-1 at 3; *see also* Doc. 30 at 4.) No other contraband was located in the residence. (Doc. 17-1 at 3.)

With the officers, Ms. Henry returned to the scene of the traffic stop where the vehicle was released to her. (Doc. 17-1 at 3.) The passenger was released and not arrested, and Defendant was transported to the East Baton Rouge Sheriff's Narcotics Office for further processing. (Doc. 17-1 at 3; *see also, e.g.*, Doc. 29 at 2–3; Hr'g Tr. 15:22–24, 16:8–10, June 16, 2015.) While at the Narcotics Office, Defendant again advised that all of the contraband found both in his car and at his home belonged to him. (Doc. 17-1 at 3.) He also confirmed that the drugs seized were marijuana and cocaine. (*Id.*)

### III.    DISCUSSION

The Fourth Amendment of the United States Constitution ("Fourth Amendment") declares: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon

probable cause." U.S. CONST. amend. IV; *Ex parte Bollman*, 8 U.S. 75, 110, 2 L. Ed. 554 (1807) (citing this constitutional prohibition). The principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions" is among those most firmly ingrained in our constitutional criminal procedure jurisprudence. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716, 173 L. Ed. 2d 485 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967)). In cases where a search is not conducted pursuant to a warrant, the government bears the burden of proving that the search was valid. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citing *United States v. Castro*, 166 F.3d 728, 733 n.7 (5th Cir. 1999)).

### A.    Traffic Stop & Search of the Car

#### 1.    *Parties' Arguments*

Defendant contests the legality of the actual stop and the constitutionality of the search and seizure of items from his vehicle. (Doc. 14 at 2.) The Government asserts that Defendant was stopped on the grounds that his license plate frame was obstructing the view of the license plate's expiration date. (Doc. 17-1 at 4–5.) Having analyzed Defendant's arguments, this Court finds no merit in either.

#### 2.    *Analysis: Traffic Stop*

Traffic stops are considered seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S. Ct. 1391, 1396, 59 L. Ed. 2d 660 (1979); *United States v. Jones,* 234 F.3d 234, 239 (5th Cir. 2000). However, because traffic stops are considered

more analogous to investigative detentions than formal arrests, courts analyze the constitutionality of traffic stops under the standard articulated in *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 889 (1968) ("*Terry*"). *Terry* articulated a two-part test, which evaluates: (1) whether the officer's action was "justified at its inception," and (2) whether the officer's subsequent actions were "reasonably related in scope to the circumstances that justified the stop in the first place." *United States v. Lopez–Moreno,* 420 F.3d 420, 430 (5th Cir. 2005) (quoting *Terry*, 392 U.S. at 19-20); *see also, e.g.*, *United States v. Fajardo-Guevara*, 507 F. App'x 365, 366 (5th Cir. 2013) (per curiam) ("The legality of a traffic stop is examined under the two-pronged analysis described in *Terry*[.]"); *United States v. Castro*, 480 F. App'x 782, 784 (5th Cir. 2012) (same). "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Lopez-Moreno*, 420 F.3d at 430; *see also Whren v. United States,* 517 U.S. 806, 810, 116 S. Ct. 1769, 1772–73, 135 L. Ed. 2d 89 (1996) (permitting a police officer to stop a vehicle if he has probable cause to believe a traffic violation has occurred). Thus, while "[a]n officer's mere hunch" is never "enough," *United States v. Castillo*, No. 14-41425, 2015 U.S. App. LEXIS 16213, at *18, 2015 WL 5314833, at *6 (5th Cir. Sept. 11, 2015) (relying on *Navarette v. California*, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014)), "a reasonable mistake of law" will give rise to "the reasonable suspicion necessary to uphold [a] a seizure under the Fourth Amendment," *United States v. Guerrero*, 603 F. App'x 328, 329 (5th Cir. 2015) (alteration in original) (citing *Heien v. North Carolina*, 135 S. Ct. 530, 534, 190 L. Ed. 2d 475 (2014)).

In this case, Louisiana law sets forth the relevant rules for determining whether the Officers made a reasonable mistake. *See United States v. Alvarado-Zarza*, 782 F.3d 246, 249–50 (5th Cir. 2015) (turning to Texas law to determine the extent to which an officer committed an

unreasonable mistake). "Louisiana motor vehicle law is clear that all vehicles operated on Louisiana highways must display a license plate." *State v. Harris*, 140 So. 3d 1226, 1231 (La. Ct. App. 2014). Louisiana Revised Statutes § 47:507 urther provides that "[e]very permanent registration license plate shall at all times be securely fastened to the vehicle to which it is assigned . . . in a place and position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible." LA. R.S. § 47:507.[3] Louisiana's Administrative Code adds that the plate's legibility must render it "readable for a distance of 50 feet to the rear of the vehicle." LA. ADMIN. CODE tit. 55, § 811(B)(6)(b);[4] *State v. Williams*, 112 So. 3d 1022, 1027 (La. Ct. App. 2013) (citing both Title 55 and Section 47:507). Consequently, if the Officers believed the plate's every bit of information to be illegible from within fifty feet, their factual mistake will not invalidate the stop and immediately resulting search.[5]

In light of this patent law and the uncovered facts, this Court cannot conclude that the Officers' stop, even if based on a mistake of law, was not reasonable under the totality of circumstances. Of course, if the facts adduced at the First and Second Hearings had confirmed that Defendant's license plate had been partially obstructed from view, the stop would have been unquestionably "justified at its inception." *Lopez-Moreno*, 420 F.3d at 430. Though no such firm data emerged, it is clear that the Officers could not quite make out Henry's license plate, and that they stopped him based on this apparent illegibility, as Defendant concedes, (Doc. 29 at 1). Thus, Officer Freeman testified that, "riding behind . . . [Henry]" that night, he could not see the expiration date. (Hr'g Tr. 8:1–14, June 16, 2015; *see also* Doc. 17-1 at 5.) As such, both officers

---

[3] In this order, any reference to "Section 47:507" or "§ 47.507" is to this section of Louisiana Revised Statutes.

[4] In this order, any reference to "Title 55" is to this title of the Louisiana Administrative Code.

[5] As Part III.3 discusses, but for the intervening smell, such a search would be limited in scope.

reasonably believed Henry to be in violation of Louisiana law: "Our intention was to let him know that he was in violation and if the plate was actually valid we would have let him go with a warning." (Hr'g Tr. 8:17–19, June 16, 2015.) Regardless of whether the plate's expiration date later proved perfectly legible within 50 feet, at the time in which the Officers halted Defendant's trip, the Officers considered Henry's license plate to contravene either Section 47:507 generally or Title 55 specifically. Since the facts do not show this impression to be both false and unreasonable, as case law demands, this Court can find no *Terry* violation.

While Defendant attempts to distinguish between the license plate and registration sticker, (Doc. 29 at 3), this is a distinction without a difference under Louisiana law. As Title 55 makes clear, the plate's pivotal information must be clear and legible, and that critical data includes "the expiration date of the plate." *See* LA. ADMIN. CODE tit. 55, § 811(B)(3). Otherwise, no officer would be able to assess the plate's "valid[ity]," which necessarily requires knowledge of its expiration date, as he or she must to be capable of doing so as to fulfill his or her legal obligation. *Id.* § 811(B)(6)(b). All "numbers," a phrase logically including both the license plate number and the expiration date's relevant digits, must not be obscured or unclear. Even if not, as the foregoing reasoning shows, this understanding is not an unreasonable construction of controlling law. *See Whitfield v. United States*, 99 A.3d 650, 663 (D.C. 2014) (construing a similar DC regulation to prohibit "obstruct[ing any] identifying information" but not as "effectuat[ing] a ban on virtually all license plate frames"). Consequently, the apparent opacity of the expiration date on Defendant's license plate, (Hr'g Tr. 7:13–16, June 16, 2015; Doc. 17-1 at 4), was enough to authorize the Officers' stop of his vehicle.

*3.*     ***Analysis: Search of Car based on Marijuana's Odor***

Having established that Defendant was lawfully stopped, the Officer's subsequent actions must be "reasonably related in scope to the circumstances that justified the stop in the first place" for the Fourth Amendment to be followed. *Lopez-Moreno*, 420 F.3d at 430. Importantly, after effectuating a traffic stop, law enforcement is permitted to order the driver out of the car without further justification. *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977) (per curiam); *see also United States v. Ibarra-Sanchez,* 199 F.3d 753, 761 (5th Cir. 1999). The same is true for passengers. *Maryland v. Wilson*, 519 U.S. 408, 415 (1997); *United States v. Meredith*, 480 F.3d 366, 367 (5th Cir. 2007). But, when the purposes of the stop are resolved and the officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts. *See United States v. Gonzalez,* 328 F.3d 755, 758 (5th Cir. 2003). Even so, "[p]robable cause is the sum total of layers of information available to law enforcement officials," and "[the] trained officer" is expected to "draw[] inferences and makes deductions . . . that might well elude an untrained person." *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) (internal quotation marks omitted). If he or she does so, absent patent unreasonableness or demonstrated illegality, those deductions merit respect.

Here, the sequence of facts is important to resolving this particular issue. Upon approaching Defendant's vehicle, stopped on the belief that his plate was not fully legible as Louisiana law requires, Corporal Trosclair alleges he smelled a strong odor of marijuana; Defendant does not contest the veracity of this claim. (Hr'g Tr. 9:1–7, June 16, 2015; Doc. 29 at 1.) He then asked Defendant and the passenger to step out of the vehicle. (Doc. 29 at 1.) Before Corporal Trosclair could even address the original reason for the stop, he was thus confronted with the odor of marijuana, an illegal substance under state and federal law in Louisiana.

Under controlling precedent, this drug's unmistakable odor adequately provided the additional suspicion necessary to provide constitutional sanction for the Officers' subsequent search. Indeed, as case law clearly establishes, a detectable odor of marijuana emanating from a vehicle provides law enforcement with probable cause to search the vehicle. *See, e.g.*, *Reed*, 882 F.2d at 149; *United States v. Hahn*, 849 F.2d 932, 935 (5th Cir. 1988); *United States v. Sawyer*, 849 F.2d 938 (5th Cir. 1988). As the Fifth Circuit explicitly stated in *Reed*, "the detection of the odor of mari[j]uana justifie[s] a search of the entire vehicle, including the locked compartment that was a likely place to conceal contraband." *Reed*, 882 F.2d at 149. Because Corporal Trosclair smelled marijuana immediately upon approaching Defendant's vehicle, any questions regarding the length of detention or consent to the search are irrelevant, for binding precedent compels this Court to uphold the prompted search's legality. Consequently, this Court does so.

### 4.      *Analysis: Search of Car based on Consent*

"[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043, 36 L. Ed. 2d 854 (1973). The requisite consent must be both freely and voluntarily given. *Id* at 248-49; *see also United States v. Tompkins,* 130 F.3d 117, 121 (5th Cir. 1997).   Voluntariness is "a question of fact to be determined by the totality of circumstances" surrounding the search.  *Schneckloth*, 412 U.S. at 227. Some of the factors that courts have considered include: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of a defendant's cooperation with the police; (4) a defendant's awareness of his right to refuse consent; (5) a defendant's education and intelligence; and (6) a defendant's belief that no incriminating evidence will be found. *United*

*States v. Morales,* 171 F.3d 978, 982-983 (5th Cir. 1999). No single factor is outcome determinative. *Id.* Thus, regardless of the foregoing analysis, *see supra* Part III.A.3, if the record establishes that Defendant consented to his car's search voluntarily and knowingly, the car's search was constitutionality permissible.

On the facts provided, this Court can discern no basis for finding Defendant's consent to be either involuntary or coerced. True, at the time Corporal Trosclair explicitly asked for his consent, Defendant had been Mirandized. Nonetheless, Defendant was only standing to the side of his vehicle, and he had not been handcuffed or placed into the police vehicle. According to the narrative proffered by the Government, one left uncontroverted by Defendant, he completely cooperated with the police. Notably, moreover, Defendant had been informed of his right to remain silent before Corporal Trosclair sought consent to search Defendant's vehicle, (Doc. 17-1 at 2), though no warning is required, *see Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996) (holding that it would be "unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary"). Defendant has not offered any evidence regarding his education or intelligence, or in any way establish his belief that no incriminating evidence would be found; actually, to the decided contrary, Defendant allegedly informed Corporal Trosclair that he would find narcotics and a firearm if he searched the car. (Doc. 17-1 at 2.) Accordingly, due to the overwhelming weight of the uncontested facts, this Court finds that Defendant's consent to search was freely and voluntarily given. The Fourth Amendment was therefore satisfied rather than contravened.

**B.      Consent Search of the Home**

The Court has held that the Fourth Amendment recognizes a valid warrantless entry and

search of a premise when police obtain the voluntary consent of an occupant who shares authority over a common area. *United States v. Matlock*, 415 U.S. 164, 170, 94 S. Ct. 988, 992, 39 L. Ed. 2d 242 (1974); *see also, e.g.*, *Morales v. Boyd*, 304 F. App'x 315, 318–19 (5th Cir. 2008). Even reasonably apparent authority is sufficient. *Illinois v. Rodriguez*, 497 U.S. 177, 187, 110 S. Ct. 2793, 2800–01, 111 L. Ed. 2d 148 (1990); *see also, e.g.*, *United States v. Anthony*, 487 F. App'x 921, 923 (5th Cir. 2012) (citing *id.*); *United States v. Newton*, 463 F. App'x 462, 468 (5th Cir. 2012) (characterizing *Illinois* as standing for the proposition that "warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not"). It just need be "realistic," *Illinois*, 497 U.S. at 187 (distinguishing contrary precedent), based upon a finding "that the searching officers reasonably (though erroneously) believe[d] that the person who has consented to their search had the authority to so consent," *United States v. Iraheta*, 764 F.3d 455, 463 (5th Cir. 2015) (summarizing circuit precedent on the outer bounds of such apparent authority); *see also United States v. Navarro*, 169 F.3d 228, 230 (5th Cir. 1999) (concluding that a co-defendant's consent included the consent to search a bag found to contain drugs and owned by the defendant as there was no indication that the co-defendant had advised the officers that the luggage in the vehicle was not his).

Here, Ms. Henry, Defendant's wife, a person with clearly apparent, if not actual, authority, gave the consent that this body of law demands. When law enforcement encountered Ms. Henry, officers advised her "of the situation and asked her for consent to search their residence." (Doc. 17-1 at 3.) Knowingly and voluntarily, Ms. Henry then signed a search waiver allowing officers to search *her* own—and Defendant's—residence. With the same clear awareness, Ms. Henry confirmed that she did not own any firearms and advised that she did not use the vehicle her

husband had been driving when stopped. Therefore, by virtue of Ms. Henry's own statements, anything found in the vehicle would logically belong to her husband.  She was also present while the officers searched, and she neverever rescinded her consent or limited the scope of her consent according to the evidence presented to this Court in writing and at oral argument.  On these bare facts, Ms. Henry's consent appears to have been freely and voluntarily given; on these facts, no officer could reasonably doubt her authority to consent to a search of her spouse's home. Therefore, under controlling law, any items seized pursuant to the search of the residence cannot be suppressed.


**C.     Statements**

Finally, Defendant alleges that his interrogation was made in violation of his rights and without proper consent or waiver of his Fifth Amendment rights and right to consult with counsel. (Doc. 14 at 2.) On the facts before the Court, however, there is no basis on which his statements may be suppressed.   Once more, the facts are decisive here. According to the Government, Corporal Trosclair Mirandized Defendant shortly after he detected the odor of marijuana and ordered Defendant and the passenger out of his vehicle.   (Doc. 17-1 at 2.) In other words, Defendant was properly informed of his rights prior to making any statements and confirmed he understood his rights before he was asked any additional questions.[6]  As Defendant has put forth no facts to contradict the Government's version of the events, the statements cannot be suppressed.

---

[6] Defendant made several statements after being read his rights.  First, Corporal Trosclair asked if Defendant had any marijuana in the vehicle.  After obtaining consent to search, and locating the marijuana and a firearm in the vehicle, officers placed Defendant in the rear of a marked City of Baker police vehicle.  Corporal Trosclair then inquired whether Defendant had more marijuana at his home.  Defendant advised that he did.  After the search of his residence concluded, Defendant was taken to the East Baton Rouge Parish Sheriff's Office Narcotics Office for further processing. There, he again confirmed that the contraband located was his, and that the drugs found were, in fact, marijuana and cocaine.

Clinching this conclusion, the Fifth Circuit has held that the failure of law enforcement to give *Miranda* warnings before seeking consent does not prohibit the use of a defendant's in-custody statement granting consent to search. *United States v. Stevens*, 487 F.3d 232, 242 (5th Cir. 2007); *accord, e.g.*, *United States v. Blevins*, Crim. No. 11-0012, 2011 U.S. Dist. LEXIS 78995, at *20, 2011 WL 2910504, at *7 (W.D. La. May 31, 2011) (citing *id.*); *United States v. Guess*, 756 F. Supp. 2d 730, 746 (E.D. Va. 2010) (same). As such, even if Defendant had not been properly informed of his *Miranda* rights, such a failure cannot provide a basis on which to exclude his post-stop statements.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' **Motion to Suppress** (Doc. 14) is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>October 27, 2015</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**